**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-CR-00349 (TJK)** |
| **v.** | : | |
| | : | |
| **ISRAEL MATSON,** | : | |
| | : | |
| **Defendant** | : | |

# GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Israel Matson to 14 days intermittent confinement as a condition of 2 years of probation, 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I. Introduction

Defendant Israel Matson, a 28-year-old restorer of Airstream trailers, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

Matson pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by Matson's (1) trespass inside the U.S. Capitol building for over half an hour, where he carried a bullhorn which he allowed others to use inside the building.

The Court must also consider that Matson's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Matson's crime support a sentence of 2 years of probation with 14 days of intermittent confinement, 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution in this case.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* DE 16.

*Defendant Matson's Role in the January 6, 2021 Attack on the Capitol*

Matson flew from Utah to North Carolina, where he met a family member and drove to Washington D.C. on January 6, 2021. He wore a red colored beanie cap with white lettering, rust colored jacket, orange/rust colored backpack with red/orange colored hair, dark colored pants and shoes, and carried a red/white bullhorn. *See* Image 1.

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.



*Image 1 - Israel Matson walking to the U.S. Capitol on January 6, 2021.*[2]

Matson was captured on several different Closed-Circuit Television (CCTV) cameras and open-source materials within the United States Capitol. Matson entered the United States Capitol through the upper west terrace door at approximately 2:33 p.m. *See* Image 2.

*Image 3 – Matson entered the West Terrace door*

---

[2] Source: YouTube - Alyssa Marotta (Alyssa1979M) The March! Washington DC January 6 2021 https://www.youtube.com/watch?v=z_7Q8Tzlr7I&t=1017 Timecode: 16:56

He proceeded to the Rotunda, where he remained for less than one minute. *See* Image 4.

*Image 4 – Matson in the South Rotunda*

Matson then walked through the Statuary Hall and the Statuary Hall Connector on this way to the House of Representatives Chamber. *See* Image 5.

*Image 5 – Matson in Statuary Hall*

Matson joined a group of other rioters standing outside the doors leading to the House of Representatives Chamber. This was minutes before Ashley Babbitt was shot to death near that location. See Image 6.

*Image 6 - Matson at the doors leading to the House of Representatives Chamber.*[3]

Matson walked back towards Statuary Hall in the Hall Connector at approximately 2:52 p.m. to the Rotunda. There, he handed his bullhorn to a female rioter who appeared to use it. *See* Image 7.

*Image 7 – Matson in the Rotunda after giving his bullhorn to another rioter*[4]

[3] Twitter - RichieMcGinniss RichieMcG - Here is the moment I arrived at the doors to The House.h264.mp4 Timecode: 0:14

[4] Court Document Screenshots & Case Files - James McGrew - Video 13.h264.mp4 https://propublica-data-j6cases-videos.s3.us-east-

Matson departed from the U.S. Capitol Building at approximately 3:05 p.m. after having remained inside for approximately thirty-two minutes. *See* Image 8.

*Image 8 – Matson Departing the U.S. Capitol Building*

*Matson's FBI Interview*

On April 19, 2022, the FBI interviewed Matson at his address in Ogden, Utah. During the interview, Matson admitted he flew from Salt Lake City, Utah to North Carolina where he met a family member and drove to Washington, D.C. to attend the rally in Washington, D.C, on January

1.amazonaws.com/983b83301eed013a64612cde48001122.mp4?_ga=2.202635218.235702899.1638144294-233311640.1635534856 Timecode: 0:01

6, 2021. Matson identified photos of himself in and outside of the U.S. Capitol and stated he entered the Capitol's central door, eventually making it into the House of Representative's area. Later, he entered Statutory Hall and provided his bullhorn to a female who asked to use it. After hearing reports of a shooting in the building, Matson decided to leave. Matson admitted that since January 6, 2021, Matson had been searching online for himself in videos and photographs documenting the events of January 6, 2021. He further advised he would accept any consequence he may have to face for his actions on January 6, 2021.

*The Charges and Plea Agreement*

On July 17, 2023, the United States charged Matson by a complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On October 18, 2023, pursuant to a plea agreement, Matson pleaded guilty to Count One of the Information, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

## III. Statutory Penalties

Matson now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Matson faces up to six months of imprisonment and a fine of up to $5,000. Matson must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the

Section 3553(a) factors weigh in favor of 14 days of intermittent confinement as a condition of 2 years' probation, 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**A. The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Matson's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Matson, the absence of violent or destructive acts is not a mitigating factor. Had Matson engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Matson's case is the amount of time spent inside the U.S. Capitol building and his movement to numerous locations inside the building, including at the doors to the House of Representatives. Also aggravating is his carrying of a bullhorn inside the Capitol building, where he allowed another person to use it.

Accordingly, the nature and the circumstances of this offense establish the need for a short sentence of intermittent incarceration.

**B. Matson's History and Characteristics**

To his credit, Matson does not have any criminal history according to the PSR. However, his actions on January 6, 2021, cannot be ignored. Matson was well aware of the appropriate

means and manners for expressing one's political views having studied political science/pre-law at the University of North Carolina.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic

processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of the sentence recommended by the Government. With more elections forthcoming, Matson must be deterred from committing any such acts again.

*Availability of Intermittent Confinement as a Condition of Probation*

As a condition of probation, a court may order that the defendant be incarcerated "during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release." 18 U.S.C. § 3563(b)(1); *see also United States v. Little*, 78 F.4th 453, 461 n.7 (D.C. Cir. 2023) (section 3563(b)(1) "contemplates *short* periods of confinement like 'nights' and 'weekends' interspersed throughout probation"). The statute was designed to give courts flexibility in the "fashioning of conditions of probation in order to make probation a useful alternative to a term of imprisonment." S. Rep. No. 98-225, at 59 (1983). Because Matson has pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), a second-degree misdemeanor, the statutory maximum of total confinement the Court may impose under § 3563(b)(10) is six months.

Judges in this district have imposed intermittent confinement as a condition of probation in many January 6 cases. *See*, *e.g.*, *United States v. Cameron*, 22-cr-17 (TFH), ECF No. 36 (D.D.C. Aug. 17, 2022) (imposing 30 days of confinement in three-day intervals as condition of three years of probation); *United States v. Vuksanaj*, 21-cr-620 (BAH), ECF No. 43 (D.D.C. Apr. 29, 2022) (imposing 42 days of confinement in 14-day intervals as condition of three years of probation). While the statute refers to multiple intervals, a single short interval is also permissible. *See*, *e.g.*,

*United States v. Valentin*, 21-cr-702 (JEB), ECF No. 65 (D.D.C. July 17, 2023) (imposing single 10-day interval of confinement as condition of 12 months of probation); *United States v. Escalera*, No. 22-cr-364 (APM), ECF No. 36 (D.D.C. Aug. 8, 2023) (imposing single seven-day interval as condition of two years of probation); *see also* S. Rep. No. 98-225, at 99 (noting that statute was intended to permit a single "brief period of confinement").

Here, a condition of intermittent confinement totaling 14 day is sufficient, but not greater than necessary, to serve the purposes of sentencing under 18 U.S.C. § 3553(a)(2).

**E. The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[5] This Court must sentence Matson based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Matson has pleaded guilty to Count One of the Information, charging him with parading, demonstrating, and picketing in the U.S. Capitol, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class A/B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to

---

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time in other places within the Capitol.

In *United States v. Frederick Skylor Webb***,** 23-cr-225 (RCL), Judge Lamberth sentenced a defendant to 24 months of probation with 14 days intermittent confinement. The defendant entered the United States Capital Building through the senate wing door at approximately 3:05 p.m., filming the events with his cell phone and talking with other rioters until departing the Capitol after approximately 14 minutes.

In related cases of *United States v. Paul Lovely*, 23-CR-19 (CKK) and *United States v. Thomas Carey* , 22-CR-375 (CKK), Judge Kollar Kotelly sentenced the defendants to 36 months' probation and 14 days of intermittent confinement where they: (1) accessed sensitive areas of the U.S. Capitol building, (2) remained inside the U.S. Capitol building for approximately 30 minutes; and (3) observed people ram a bicycle rack into an officer and removed media items damaged by rioters.

The Government makes its recommendation in light of the D.C. Circuit's decision in *United States v. James Little*, __ F.4th __, No. 22-3018, 2023 WL 5313529 (August 18, 2023).

Under *Little*, this Court may no longer impose a "split sentence" of both probation and incarceration on a single petty misdemeanor. However, the *Little* Court recognized the Government's argument that 18 U.S.C.§ 3563(b)(10) allows a defendant on probation to "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time." See *Little*, 2023 WL 5313529 at 7 n. 7. The Court further noted that the statute expressly contemplated a short period of confinement like nights and weekend. See *id*. Thus, the Government makes its recommendation in this case consistent with *Little* to reflect a need to deter future criminal actions that supervision would have ensured.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Matson must pay $500 in restitution, which reflects in part the role Matson played in the riot on January 6.[7] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Matson's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to2 years of probation with 14 days of intermittent confinement, 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Matson's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: s/ *Joseph Huynh*
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270